

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| CHRISTOPHER RYAN LEIGH STEELE,<br>　　　　Plaintiff,<br><br>vs.<br><br>ABC PHONES OF NORTH CAROLINA,<br>INC., *d/b/a, Victra Verizon*,<br>　　　　Defendant. | §<br>§<br>§<br>§　Civil Action No.: 3:25-198-MGL<br>§<br>§<br>§<br>§ |

**ORDER ADOPTING THE REPORT AND RECOMMENDATION
AND GRANTING DEFENDANT'S MOTION TO DISMISS**

**I.　INTRODUCTION**

Plaintiff Christopher Ryan Leigh Steele (Steele) brings this civil action against his former employer, Defendant ABC Phones of North Carolina, Inc., d/b/a Victra Verizon (ABC). He asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

This matter is before the Court for review of the Report and Recommendation (Report) of the United States Magistrate Judge suggesting the Court grant ABC's motion to dismiss for failure to state a claim. The Report was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

II.     FACTUAL AND PROCEDURAL HISTORY

The Magistrate Judge issued the Report on May 1, 2025.  Steele objected on May 14, 2025, and ABC replied on May 28, 2025.  The Court has carefully reviewed Steele's objections but holds them to be without merit.  It will therefore enter judgment accordingly.

In April 2020, Steele was promoted to store manager of ABC's store in Lexington, South Carolina.  As store manager, Steele "work[ed] under district manager David Eads" (Eads), and he "consistently received shoutouts on calls that included kudos for doing a good job."  Amended Complaint ¶ 11.

"On September 5, 2022, [Steele] informed Eads that he was transitioning from female to male and asked to be referred to as Ryan."  *Id.* ¶ 13.  Despite Steele's "job performance remain[ing] top notch during this time[,]" Steele alleges, "after announcing his transition, Eads no longer provided [him] with shoutouts or kudos for his performance on group calls.  The change in Eads' attitude towards [Steele] was drastic enough that [his] colleague noticed [it]."  *Id.* ¶ 14.

Steele maintains, "shortly after [he] informed Eads of [his] transition, Eads began to question [his] ability as a manager and his qualifications for the position."  *Id.* ¶ 15.  During almost every shift Steele and Eads worked together, Eads "consistently ma[d]e targeted comments to [Steele] questioning his qualifications for the position."  *Id.* ¶ 16.  Prior to September 5, 2022, Steele avers "his qualifications . . . had not been questioned.  Additionally, cisgendered employees in similar positions were not being questioned about their qualifications."  *Id.* ¶ 17.

On December 15, 2022, Eads informed Steele he "was going to receive two Formal Coaching and Documentation (FCAD) write ups for his performance for the months of October and November."  *Id.* ¶ 18.  Steele posits "[s]imilarly situated cisgender managers who had similar

performance[s] were not disciplined." *Id.* During the meeting, Eads also "stated [Steele] would receive a FCAD for December if the store's target was not hit." *Id.* ¶ 19.

"Despite [Steele]'s fantastic performance for the month of December," Stelle alleges, "on or around January 23, 2023, Eads stated that he highly recommended [Steele] step down from being a store manager or [he] would be terminated on February 1, 2023." *Id.* ¶ 20. Steele further maintains, "[d]ue to this threat, [he] was forced into taking a demotion" in late January 2023. *Id.* Steele contends he "felt that he was not wanted in the store during most shifts[,] and the store environment became very tense." *Id.* ¶ 22.

"In June 2023, the new store manager, Tyrell DeLee [(DeLee)], placed [Steele] on another FCAD, with approval from Eads." *Id.* ¶ 24. Steele contends "[t]his FCAD was pretextual and similarly situated cisgendered employees were not receiving similar treatment." *Id.*

Shortly thereafter, "the districts changed, which resulted in [Steele] having a new district manager, Michelle Barrier [(Barrier)]. Barrier and [Steele] had several conversations [about Steele] possibly stepping back up to the store manager position due to DeLee leaving the company." *Id.* ¶ 25. Accordingly, "[o]n July 27, 2023, [Steele] reached out to Barrier asking to speak about stepping back up and proceeded to apply to the store manager position." *Id.* ¶ 26. Steele "did not hear back from Barrier on this topic[;] however, [he] was included by Barrier on manager calls for the store and was still asked for the same things as other store managers." *Id.* ¶ 27. Barrier's change in attitude led Steele to believe she spoke with other employees about him. *Id.* ¶¶ 28–29.

Steele maintains "[n]o conversation [about the open manager position] took place until November 19, 2023, when Barrier came to the store and informed [Steele] he was receiving two FCADs[] and that a new store manager would be starting the following day." *Id.* ¶ 32. Steele

contends, "[t]hroughout the fall of 2023, [ABC] continued to target [him]. He was given a hard time about taking meal breaks, his hours were questioned, and he was consistently being treated differently than similarly situated cisgender employees. This treatment occurred almost daily." *Id.* ¶ 33.

"On December 15, 2023, [Steele] received another pretextual FCAD from the new store manager, Justin, after speaking up regarding the issues he was having surrounding his transition." *Id.* ¶ 25. Steele alleges Justin issued four other pretextual FCADs between December 2023 and January 2024. Then, "[o]n March 1, 2024, [Steele] turned in his notice of resignation [because] he could no longer work in the discriminatory environment[.]" *Id.* ¶ 41.

Steele filed a Charge of Discrimination (Charge) with the South Carolina Human Affairs Commission (SCHAC) and Equal Employment Opportunity Commission (EEOC) on September 3, 2024. He thereafter brought this lawsuit.

### III. STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court, however, need not conduct a de novo review of the record "when a party makes general and conclusory objections that do not direct the court to a specific error in the [Magistrate Judge's] proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.

1982). The Court reviews the Report only for clear error in the absence of specific objections. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating "in the absence of a timely filed objection, a district court need not conduct a de novo review[] but instead must 'only satisfy itself that there is no clear error on the face of the record to accept the recommendation'").

### IV.    DISCUSSION AND ANALYSIS

In the amended complaint, Steele asserts hostile work environment, constructive discharge, and retaliation claims. The Magistrate Judge recommends the Court dismiss all three claims. Steele objects to the Magistrate Judge's suggestion relative to his hostile work environment and retaliation claims.

As a preliminary matter, Steele invokes the "no set of facts" pleading standard from *Conley v. Gibson*, 355 U.S. 41 (1957). *See* Steele's Objections at 2 ("A motion to dismiss should be granted only when it appears that plaintiff can prove no set of facts to support a claim that would entitle plaintiff to relief for that claim."). But, as ABC aptly notes, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), abrogated this portion of *Conley*. Hence, in ruling upon Steele's objections, the Court will assess whether the amended complaint has "enough facts to state a claim to relief that is plausible on its face[,]" *id.* at 570, and contains more than "an unadorned, the-defendant-unlawfully-harmed-me accusation[,]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

#### A.    *Whether the Magistrate Judge erred in concluding Steele failed to state a hostile work environment claim*

Steele notes the amended complaint alleges "Eads began to consistently make targeted comments to [him] almost every shift, that he was receiving pretextual coachings, he was demoted, that he felt unwanted in the store, and was subjected to a tense environment." Steele's Objections

5

at 3.  Citing *Garrison v. R.H. Barringer Distribution Co.*, 152 F. Supp. 2d 856 (M.D.N.C. 2001), and *Riley v. Buckner*, 1 Fed. App'x 130 (4th Cir. 2001), Steele maintains these allegations permit the Court to "infer that the severe or pervasive element of [his] hostile work environment claim may be present." *Id.*

ABC, however, advances *Garrison* and *Riley* "are based on the abrogated *Conley* standard and include allegations of specific harassing comments and physical contact, not comments on employee performance."  ABC's Response at 3.  ABC posits "the only allegedly consistent and targeted comments directed at [Steele] questioned his qualifications or other performance measures[,] which do not establish an abusive or hostile environment like sexual comments, conduct or touching do."  *Id.* at 4 (citations and internal quotation marks omitted).  And, "other than occasionally receiving [FCADs] for concerns about his performance," ABC emphasizes Steele "alleges no other harassing conduct up and through the time he resigned in March 2024." *Id.* at 4–5 (internal quotation marks omitted).

To state a hostile work environment claim under Title VII, a plaintiff must demonstrate "(1) he experienced unwelcome harassment; (2) the harassment was based on [a protected characteristic]; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer."  *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 207–08 (4th Cir. 2019).

"The severe or pervasive element has both a subjective and objective component."  *Id.* at 208 (citing *Equal Emp. Opportunity Comm'n v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009)).  Thus, a plaintiff must establish he "did perceive, and a reasonable person would perceive, the environment to be abusive or hostile."  *Cent. Wholesalers*, 573 F.3d at 175.

6

In determining whether a defendant's conduct was objectively severe or pervasive, the Court "look[s] to the totality of the circumstances, including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)).

"[P]laintiffs must clear a high bar in order to satisfy the severe or pervasive test. Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard." *Equal Emp. Opportunity Comm'n v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). "These standards . . . are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher*, 524 U.S. at 788 (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).

Here, even accepting Steele's allegations as true, the Court agrees with the Magistrate Judge the totality of the circumstances indicate "all of the conduct complained of by [Steele] falls short of rising to the level of an abusive or hostile environment." Report at 6. Simply put, Steele has failed to allege ABC's conduct was "sufficiently severe or pervasive to alter [his] conditions of employment and to create an abusive work environment." *Guessous*, 828 F.3d at 221. The Court will therefore overrule his first objection.

### B.     *Whether the Magistrate Judge erred in concluding Steele failed to state a constructive discharge claim*

Steele fails to advance any specific objections to the Magistrate Judge's recommendation relating to his constructive discharge claim. The Court agrees with the Magistrate Judge's rationale and suggestions, so it is unnecessary to repeat the Magistrate Judge's discussion and analysis here.

### C. *Whether the Magistrate Judge erred in concluding Steele failed to state a retaliation claim*

Steele next objects to the Magistrate Judge's conclusion he failed to state a retaliation claim based upon four allegedly adverse acts: demotion, failure to promote, performance coaching, and constructive discharge.

By way of background, a plaintiff asserting retaliation under Title VII must show: "(1) that he engaged in protected activity, (2) that the employer took a materially adverse action against him[,] and (3) there is a causal connection between the protected activity and the adverse action." *Perkins*, 936 F.3d at 213.

#### 1. *Demotion*

Steele advances he suffered from numerous discriminatory and retaliatory acts over an extended period of time. But, "each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) (internal quotation marks omitted). And, "only incidents that took place within the timely filing period are actionable." *Id.*

Steele filed a Charge with the SCHAC, so his claims are subject to a 300-day limitations period. *See* 42 U.S.C. § 2000e-5(e)(1) (stating, when an aggrieved person initiates proceedings with the appropriate state agency, he must file a charge with the EEOC "within three hundred days after the alleged unlawful employment practice occurred"). According to the amended complaint, however, Steele "was forced into taking a demotion" in late January 2023. Amended Complaint ¶ 20. This is at least 581 days before Steele filed the Charge on September 3, 2024. He is therefore foreclosed from advancing a claim of retaliatory demotion.

8

### 2.   *Failure to promote*

Steele further posits the Charge "contained enough information to encompass [ABC's] failure to [promote] him." Steele's Objections at 5. ABC, however, avers the Charge "makes no reference to an opening in the store manager role between . . . DeLee becoming store manager in July 2023 and [Justin] being store manager in December 2023." ABC's Response at 8.

The Fourth Circuit has explained "[t]he allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962–63 (4th Cir. 1996) (citing *King v. Seaboard Coast Line R.R. Co.*, 538 F.2d 581, 583 (4th Cir. 1976)). As such, "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Id.* at 963 (citing *King*, 538 F.2d at 583). Claims "exceed[ing] the scope of the [administrative] charge and any charges that would naturally have arisen from an investigation thereof . . . are procedurally barred." *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995) (citing *Equal Emp. Opportunity Comm'n v. Gen. Elec. Co.*, 532 F.2d 359, 366 (4th Cir. 1976)).

Having fully reviewed the Charge, the Court is unconvinced Steele's failure to promote claim is reasonably related to the allegations contained therein. It therefore exceeds the scope of the Charge and is procedurally barred.

### 3.   *Performance coaching and constructive discharge*

In Steele's objections, he condenses the performance coaching and constructive discharge subclaims into a single claim. Specifically, he argues "[t]he alleged performance coachings along with the other treatment by [ABC] later formed the basis for his constructive discharge." Steele's

9

Objections at 5.  ABC, on the other hand, asserts "[t]here are no factual allegations [it] used the FCADs as a tool to threaten or take any type of adverse action."  ABC's Response at 9.

The Supreme Court has explained "the antiretaliation provision[ of Title VII], unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment."  *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006).  Accordingly, the "standard for establishing an adverse employment action under Title VII's antiretaliation provision is more expansive than the standard for demonstrating a tangible employment action under the statute's antidiscrimination provisions."  *Ray v. Int'l Paper Co.*, 909 F.3d 661, 670 (4th Cir. 2018).

For purposes of retaliation, an adverse employment action has been defined as something that "might have dissuaded a reasonable worker from engaging in protected conduct."  *White*, 548 U.S. at 68 (internal quotation marks omitted) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)).  But, because a plaintiff must demonstrate materiality to prevail on a retaliation claim, "it is important to separate significant from trivial harms [inasmuch as] Title VII . . . does not set forth a general civility code for the American workplace."  *Id.* (quoting *Oncale*, 523 U.S. at 80).

Here, Steele has neglected to allege ABC—through Eads, DeLee, Barrier, or Justin—threatened further disciplinary action when it issued the FCADs or later subjected him to related consequences.  And, notwithstanding ABC's issuance of ten FCADs between December 2022 and January 2024, Steele remained employed until he resigned in March 2024.  Hence, the Court agrees with the Magistrate Judge Steele's allegations of "numerous FCADs do not rise to the level of material[ly] adverse."  Report at 15.  Thus, he is unable to establish this claim either.

*****

For all these reasons, the Court will overrule Steele's second objection.

V.      **CONCLUSION**

After a thorough review of the Report and the record in this case under the standards set forth above, the Court overrules Steele's objections, adopts the Report, and incorporates it herein. It is therefore the judgment of the Court ABC's motion to dismiss is **GRANTED**, and Steele's claims are dismissed without prejudice.

**IT IS SO ORDERED.**

Signed this 23rd day of September 2025, in Columbia, South Carolina.

s/ Mary Geiger Lewis<br>
MARY GEIGER LEWIS<br>
UNITED STATES DISTRICT JUDGE